<u>NOT FOR PUBLICATION</u>

## <u>UNITED STATES DISTRICT COURT</u>
## <u>FOR THE DISTRICT OF NEW JERSEY</u>

|  |  |  |
|---|---|---|
| _____ | : | |
| LORRAINE DRISCO, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No. 03-397 (JAG) |
| v. | : | |
| | : | **OPINION** |
| CITY OF ELIZABETH, et al., | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

<u>**GREENAWAY, JR., U.S.C.J.**</u>[1]

This is a civil action for damages arising out of the alleged malicious prosecution of a criminal action.  The plaintiff, Lorraine Drisco ("Plaintiff"), initiated suit alleging, <u>inter alia</u>, that the defendants instituted and continued a state criminal prosecution for murder, against Plaintiff, without probable cause.  Defendant Union County Prosecutor's Office (the "County Prosecutor's Office"), and numerous individual defendants, including assistant prosecutors from the County Prosecutor's Office (the "Prosecutor Defendants"),[2] and Union County detectives and investigators (the "Officer Defendants")[3] (collectively, "Defendants"),[4] moved for summary

_____

[1]  Sitting by designation on the District Court.

[2]   The Prosecutor Defendants include:  Assistant ("Asst.") Prosecutor Ann Luvera, Asst. Prosecutor Deborah White, Asst. Prosecutor William Kolano, Union County Prosecutor Thomas V. Manahan, and the County Prosecutor's Office.

[3]  The Officer Defendants include:  Lieutenant Blaise Mineo, Detective ("Det.") Kevin Foley, Det. Tracy Diaz, Det. Joseph Koury, Det. Anna Zsak, Det. Mary McKinlay, Forensic

judgment, pursuant to Federal Rule of Civil Procedure 56(c).[5]  For the reasons stated below,

Defendants' motion for summary judgment is granted.

Plaintiff contends that the absence of probable cause is evident from the Defendants'

alleged failure to investigate facts that supposedly tend to exonerate Plaintiff, and to present

known exculpatory facts to the two grand juries that indicted Plaintiff.[6]

Defendants claim that probable cause existed, and continues to exist, for the criminal

proceedings against Plaintiff.  Defendants further argue that, even if probable cause is lacking,

Defendants were objectively reasonable in their belief that probable cause existed at the onset of

criminal proceedings, and through the second indictment against Plaintiff.  Defendants claim that

they are protected from liability by virtue of tort immunity, under the New Jersey Tort Claims

---

Chemist Donna Hansen, Det. John Furda, and Dorothy J. Gordimer.

[4]  By stipulation filed April 20, 2005, the parties agreed to dismiss, without prejudice, the defendants County of Union, Union County Police Department, Det. John Kaminskas, and Investigator John Kowalski.  (Docket Entry No. 12.)
     Prior to remand, Asst. Prosecutor Regina C. Caulfield moved for summary judgment along with Defendants.  Following remand to this Court, however, Plaintiff also dismissed Caulfield, without prejudice.  (Docket Entry No. 32.)

[5]  Non-moving defendants include:  the City of Elizabeth, the Police Department of the City of Elizabeth, Det. Albert Mendes, Det. Ismael Olivero, Det. Frank Saltarelli, Officer Hurler, Officer Meola and Medical Examiner Dr. Shaik.  There is no indication from the docket that Plaintiff served these non-moving defendants, or that these defendants answered Plaintiff's complaint.

[6]  Plaintiff also requests that this Court permit further discovery, in the form of depositions, pursuant to Federal Rule of Civil Procedure 56(f).  Plaintiff claims that additional facts are needed to determine what exonerating facts Defendants knew at the time of the grand jury proceedings.  This Court disagrees.  For the reasons indicated below, Plaintiff's 56(f) request is denied.

Act, codified at N.J. Stat. Ann. § 59:1-1 et seq. (the "Tort Claims Act").[7]

This Court finds that probable cause existed, and that even if probable cause was lacking, Defendants are protected by statutory immunity.

Two critical questions lie at the heart of Defendants' claim to statutory immunity.  The first is whether Defendants violated any established legal rule by failing to discover, or further investigate, exonerating facts.  The second is whether Plaintiff has established, or raised a genuine issue of material fact as to certain Prosecutor Defendants' actual malice based on a breach of a prosecutorial duty to present exculpatory facts to the grand juries.

The answer to both questions is no.

The failure to investigate exonerating facts may not serve as a basis for Plaintiff's malicious prosecution claim, as such a right is not clearly established.  Plaintiff has not argued, and the facts cannot support, a finding of actual malice by the Prosecutor Defendants.  Defendants are immune from liability for instituting and continuing a criminal prosecution against Plaintiff.

## FACTUAL BACKGROUND

The following facts are derived from evidence submitted by both parties, in support of, and in opposition to, the summary judgment motion.  The facts and all reasonable inferences drawn therefrom are viewed in a light most favorable to Plaintiff.  Andreoli v. Gates, 482 F.3d

---

[7] Under New Jersey statutory law, Defendants are all either public entities or public employees to which the Tort Claims Act applies.  N.J. Stat. Ann. § 59:1-3 (West 2010).  A public entity "includes the State, and any county or municipality, district, public authority, public agency, and any other political subdivision or public body in the State."  Id., cmt. ("The definition of 'Public Entity' provided in this section is intended to be all inclusive and to apply uniformly throughout the State of New Jersey to all entities exercising governmental functions.")  A public employee is "an employee of a public entity . . . ."  Id.

641, 647 (3d Cir. 2007).

On the morning of March 20, 1998, the body of Miguel Sales ("Mr. Sales" or "the victim") was discovered in room 17 ("Room 17") of the Saxony Motel in Elizabeth, New Jersey. (Defendants' Statement of Undisputed Material Facts ¶ 1.)  Investigators from both the City of Elizabeth and from the County Prosecutor's Office responded to the scene.  (Id. at ¶ 2.)[8]  An autopsy report, dated March 21, 2008, listed the death as a homicide.  (Id. at ¶ 1.)  The cause of death, indicated in the autopsy report, was multiple stab wounds to the chest and abdomen, "with defensive wounds to the hands."  (Id.)

Investigators obtained video footage (the "video") from a motel surveillance camera that captured persons entering the motel lobby area the morning of the murder.  (Plaintiff's Statement of Material Facts ¶ 3.)  The video appears to show a black female checking into the motel at 4:00 a.m. with a Hispanic man later identified as the victim.  (Defs.' Stmt of Facts ¶ 6.)  "The same woman appears [i]n the video[] at approximately [10:00] a.m. alone."  (Pl.'s Stmt of Facts ¶ 3.)  By the evening of March 20, 1998, investigators obtained an arrest warrant for Plaintiff, and a search warrant for Plaintiff's home.  (Defs.' Stmt of Facts  ¶¶ 10, 13.)  The following day, on March 21, 1998, Plaintiff surrendered to the police.  (Pl.'s Stmt of Facts  ¶ 16.)  On August 12, 1998, Plaintiff was indicted by a grand jury (the "first grand jury") on charges of "[f]irst [d]egree murder, [p]ossession of a [w]eapon for an [u]nlawful [p]urpose, and [u]nlawful [p]ossession of a [w]eapon."  (Defs.' Stmt of Facts  ¶ 23.)

---

[8]  Where appropriate and for purposes of tort immunity analysis, this Court refers to individual defendants working on Mr. Sales' murder case, indiscriminately, as "investigators" to account for Plaintiff's suggestion that she lacks information regarding whether the Prosecutor Defendants acted within their investigative capacity, in conjunction with the Officer Defendants.

A second indictment followed nearly two years later.  (Id. at ¶ 46.)  On May 19, 2000, the second grand jury indicted Plaintiff and an additional woman, Tara Borders, "on charges of murder, first degree robbery, felony murder and possession of a weapon for an unlawful purpose."  (Id.)

An assistant prosecutor presented the relevant portion of the video to the first grand jury.  (See generally Defendants' Pre-Remand Reply.)  A testifying police officer indicated that it was difficult to see the woman's face in the video.  (Id.)  According to Plaintiff, the woman in the video, and in the still photos produced from the video, looks nothing like Plaintiff, and clearly identifies Tara Borders as the woman who entered the motel lobby with the victim.  (Pl.'s Stmt of Facts ¶ 5.)

The first grand jury expressed concern about the video's poor quality.  (See generally Defendants' Pre-Remand Reply.)  A testifying officer indicated that a clearer image was not currently available, but that certain officers had viewed the video on a machine that produced a better quality image.  (Id.)

Grand jurors had access to witness statements, and identifications of Plaintiff from photographic lineups.  (Id.)  The second grand jury received enhanced still photos showing that Tara Borders, a twenty-five year old black female, was the woman in the video.  (Id.)  Before the second indictment issued, several eye witnesses recanted.  (Pl.'s Stmt of Facts ¶ 17.)  Prosecutor Defendants also did not present, to the first grand jury, certain physical evidence, specifically from saliva and blood tests, that did not tend to place Plaintiff in Room 17.  (Id. at ¶ 11.)[9]  During

---

[9]  This Court, viewing all facts in Plaintiff's favor, infers that Defendants received the results of these tests prior to both grand jury presentations.  (Id. ("The presence of this exculpatory evidence was not revealed to the grand jury.")); see Andreoli, 482 F.3d at 647.

the second grand jury presentation, however, a testifying officer "admitted that saliva found on a condom in [Room 17] did not match the [P]laintiff's saliva."  (Pl.'s Stmt of Facts ¶ 13.)

**Eyewitness Statements and Video Images**

On March 20, 1998, investigators received several statements from a number of witnesses.  (Defs.' Stmt of Facts ¶ 2.)  One eyewitness, Michelle Ellison, gave the police two statements on that date.  (Id. at ¶¶ 8-9.)  In Ellison's first statement, she identified Plaintiff by name and indicated that Plaintiff was a "known prostitute," that the victim was known to hire prostitutes, and that Ellison saw Plaintiff walk over to Room 17 with Mr. Sales between 5:00 a.m. and 6:00 a.m that morning.  (Id. at ¶ 8.)  Ellison told investigators that she knew the victim had a practice of hiring prostitutes, giving them drugs, and attempting to deduct the cost of the drugs from the cost of "service."  (Id.)

In Ellison's second statement, she told investigators that she had known Plaintiff for several years.  (Id. at ¶ 9.)  When investigators showed Ellison the video, Ellison identified Plaintiff as the black female in the video and identified Plaintiff from a Polaroid photograph.  (Id. at ¶ 9.)

Between the first and second indictments, Ellison recanted her identification of Plaintiff in the video.  (Id. at ¶¶ 20, 44.)  On May 9, 2000, Ellison told the police that Tara Borders was the woman in the video.  (Id. at ¶ 44.)  Ellison admitted that she lied about the identity of the woman in the video to protect Borders.  (Id.)  Ellison maintained, however, that she saw Plaintiff in Room 17 with the victim on the morning of the murder.  (Id.)

John VanNess, the Saxony Motel manager, commenced duty at 8:00 a.m. the morning of the murder.  (Pl.'s Stmt of Facts ¶ 6.)  VanNess claimed that he saw "a woman he recognized as

a prostitute who frequented the hotel leave the victim's room."  (Id. at  ¶ 6.)  VanNess initially

identified the woman in the video as a prostitute he knows as "Laura," but after an interviewing

officer refers to the woman as "Lorraine" [Plaintiff], VanNess, subsequently, also referred to the

woman as "Lorraine."  (Id. at ¶ 7.)  Between the first and second indictments, VanNess recanted

his earlier statement, indicating that he was "mistaken," that he did not see Plaintiff leave Room

17, and that he had not seen Plaintiff at the motel that morning.  (Defs.' Stmt of Facts ¶ 45.)

In August of 1998, toward the start of the murder investigation, two individuals, April

Bates, and Shaquania Whipple, identified "Tinka," as one of two women who accompanied a

man, believed to be the victim, in a car that police officers pulled over early in the morning on

the day of the murder.  (Id. at ¶¶ 24-25.)  Whipple also told investigators that she saw Plaintiff

with a Hispanic man that morning, and she identified this man from pictures of the victim.  (Id. at

¶ 24.)  Bates contacted an investigator on August 25, 1998, "and advised that Tinka's real name

was Tara Borders."  (Id. at ¶ 26.)

Plaintiff asserts that "[t]he identity of 'Tinka' [also known as] Tara Borders as a person

involved in the homicide of [Mr.] Sales was known prior to the first indictment."  (Pl.'s Stmt of

Facts ¶ 15.)  She further asserts that "[a]lthough visits to the home of Tara Borders were made by

investigators, no arrest or interview of Tara Borders occurred prior to the first indictment."  (Id.)

Prior to the first grand jury presentation, Catherine Mackenick told investigators that she

saw Plaintiff peek out of the window of Room 17 on the morning of the murder.  (Defs.' Stmt of

Facts ¶ 28.)  Mackenick and her boyfriend, Herbert Barr, told investigators that Plaintiff's

boyfriend told them there would be "trouble," if Plaintiff was implicated in the murder.  (Id. at

¶¶ 29,  32.)  Mackenick and Barr told investigators that Plaintiff was the woman in the video.

(Id. at ¶¶ 28, 31.)  On May 26, 2000, after the second indictment, Mackenick recanted, as to this identification, but maintained that she saw Plaintiff in Room 17 the morning of the murder.  (Id. at ¶ 47.)

In three statements taken in March of 2000, Tara Borders told investigators that she (Borders), Plaintiff, and the victim had sexual intercourse and took drugs together in Room 17. (Id. at ¶¶ 40-43.)  Tara Borders "admitted," and testified at her plea hearing, that she slashed the victim and Plaintiff stabbed the victim.  (Id. at ¶ 48.)

**Physical Evidence**

Investigators took possession of, at least, the following items in connection with the Saxony Motel murder investigation:  three condoms from Room 17; three five-dollar bills with reddish stains from Plaintiff's home; several locks of hair, and shoes with reddish stains, found in a plastic bag at Plaintiff's home; and blood and saliva taken from Plaintiff's person for the purposes of laboratory tests.  (Pl.'s Stmt of Facts ¶¶ 11-13.)

The stains on the five-dollar bills and Plaintiff's shoes tested negative for blood.  (Id. at ¶ 10.)  One of the condoms was tested for saliva.  (Id. at ¶ 11.)  Antigens in the saliva on the condom do not match antigens in Plaintiff's saliva.  (Id. at ¶ 13.)  The hair found at Plaintiff's home was acrylic, (id. at ¶ 10), and there is no indication that investigators found comparable hair at the scene.

**Polygraphs**

After both grand jury indictments, investigators gave polygraphs to several key individuals.  On September 27, 2000, Borders' cellmate, Martha Mazur, told investigators that Borders admitted to killing the victim.  (Defs.' Stmt of Facts ¶ 50.)  Mazur also told investigators

that Borders told Mazur that Borders was the one who stabbed the victim and that it was Plaintiff who slashed the victim with a razor.  (Id.)  Mazur's polygraph indicated that Mazur was telling the truth.  (Id.)

Investigators gave Tara Borders a polygraph, during which Borders again stated that Borders slashed the victim with a razor, and that it was essentially Plaintiff who delivered the death wounds, stabbing the victim in the stomach, chest, and leg.  (Id.  at ¶ 42.)  Borders failed her polygraph.  (Id.)

Investigators gave Plaintiff a polygraph, and the results indicated that her statements were truthful.  (Id. at  ¶ 51.)

Assistant Prosecutor Regina Caulfield wrote the presiding judge, Judge Triarsi, advising that the County Prosecutor's Office would be voluntarily dismissing the charges against Plaintiff, and requesting that the indictment be dismissed.  (Id.)  Defendants assert that the charges were dismissed because of Mazur's and Plaintiff's polygraph results.  (Id.)

## PROCEDURAL HISTORY

This case is on remand from the Court of Appeals for the Third Circuit.  Drisco v. City of Elizabeth, 268 F. App'x 203 (3d Cir. 2008).  This Court, in an earlier opinion in this matter, Drisco v. City of Elizabeth, No. 03-297(JAG), 2006 US Dist LEXIS 33983 (D.N.J. May 25, 2006) (the "May 25, 2006 Opinion"), granted summary judgment, in Defendants' favor, as to the six counts in Plaintiff's complaint, on the basis that Plaintiff failed to file her complaint within two years of the dismissal of criminal charges.[10]

---

[10]  New Jersey's two-year statute of limitations for personal injuries applies to Plaintiff's federal claims.  N.J. Stat. Ann. § 2A:14-2; see Cito v. Bridgewater Twp. Police Dep't, 892 F.2d 23, 25 (3d Cir. 1989).  A two-year statute of limitations is also applicable to Plaintiff's state law

Plaintiff filed her original complaint on January 22, 2003. (Docket Entry No. 1.)[11]

The Complaint, in separate paragraphs, incorrectly referred to two different dates, January 26, 2000 and January 23, 2001, as the date of the dismissal of charges against Plaintiff. (Compl. ¶¶ 1, 19.) The May 25, 2006 Opinion indicated that the date of dismissal was the former date, January 26, 2000, however, criminal charges against Plaintiff were dismissed on the latter date, January 23, 2001.

Plaintiff appealed the dismissal of two causes of action—improper investigation and malicious prosecution—because, as Defendants agree, this Court mistakenly relied on an incorrect date to calculate the limitations period.[12]

Based on that error, the Third Circuit vacated this Court's decision to dismiss Plaintiff's improper investigation and malicious prosecution claims, and remanded the case.[13]

Based on the correct date of dismissal, January 23, 2001, Plaintiff's claims for improper

---

claims because any action brought against Defendants under state law must be brought in accordance with the Tort Claims Act. N.J. Stat. Ann. § 59:8-8(b).

[11] Plaintiff filed her Notice of Claim in April of 2001. (Compl. ¶ 2; Defendants' Motion for Summary Judgment.)

[12] The Third Circuit noted that Plaintiff appealed "rather than allowing the district court to correct its own error pursuant to Fed. R. Civ. P. 59(e)." Drisco, 268 F. App'x at 204.

[13] The Third Circuit affirmed this Court's decision in all other respects. Plaintiff's other claims, alleging false arrest, false imprisonment, and abuse of process, remain time-barred.
     Defendant had also argued on appeal that the improper investigation and malicious prosecution claims remain time-barred because Plaintiff only alleged these claims in the amended complaint, and not in the original complaint. The amended complaint was filed on January 27, 2003 (Docket Entry No. 3), beyond the two-year statute of limitations period. Counsel for Defendants conceded at this Court's post-remand oral argument, that there is no longer any question that the complaints matched in this regard, and that the claims are not time-barred for this reason. (Oral Arg. Tr., 25, July 8, 2009.) This Court agrees.

investigation, part of count three, and malicious prosecution, count four, are not time-barred. This Court now considers the merits of Plaintiff's claims for malicious prosecution and improper investigation.

Defendants initially moved for summary judgment on October 25, 2005. (Docket Entry No. 15.) On remand, the parties submitted several submissions, renewing Defendants' motion for summary judgment and Plaintiff's opposition. On July 8, 2009, this Court held oral argument on the Defendants' motion.

## JURISDICTION AND VENUE

This Court originally had subject matter jurisdiction over Plaintiff's federal claims, pursuant to 28 U.S.C. § 1343(a)(3). This Court, in its discretion, exercises supplemental jurisdiction over Plaintiff's state law claims, pursuant to 28 U.S.C. § 1367. Venue in this Court is proper, pursuant to 28 U.S.C. § 1391(b).[14]

## LEGAL STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Bouriez v. Carnegie Mellon Univ., 585 F.3d 765, 770 (3d Cir. 2009). A factual dispute is genuine if a reasonable jury could return a verdict for the non-

---

[14] In the interests of judicial economy, as well as convenience, this Court retains supplemental jurisdiction over Plaintiff's pendant state law claims. Huertas v. Musco, 204 F.3d 109, 123 (3d Cir. 2000) ("[W]here the claim over which the district court had original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." (emphasis added)); see 28 U.S.C. § 1367(c)(3).

movant, and it is material if, under the substantive law, it would affect the outcome of the suit.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  This Court shall "view the facts in

the light most favorable to the nonmoving party and draw all inferences in that party's favor."

Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007) (citation omitted).  "In considering a motion

for summary judgment, a district court may not make credibility determinations or engage in any

weighing of the evidence . . . ."  Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)

(quoting Anderson, 477 U.S. at 255).

When the moving party has the burden of proof on an issue at trial, that party has "the

burden of supporting their motions 'with credible evidence . . .  that would entitle [them] to a

directed verdict if not controverted at trial.'"  In re Bressman, 327 F.3d 229, 237 (3d Cir. 2003)

(quoting Celotex, 477 U.S. at 331).  "[W]ith respect to an issue on which the nonmoving party

bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—

that is, pointing out to the district court—that there is an absence of evidence to support the

nonmoving party's case."  Celotex, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must

establish that a genuine issue as to a material fact exists.  Jersey Cent. Power & Light Co. v.

Lacey Township, 772 F.2d 1103, 1109 (3d Cir. 1985).  The party opposing the motion for

summary judgment cannot rest on mere allegations and instead must present actual evidence that

creates a genuine issue as to a material fact for trial.  Anderson, 477 U.S. at 248; Siegel Transfer,

Inc. v. Carrier Exp., Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995).  "[U]nsupported allegations . . .

and pleadings are insufficient to repel summary judgment."  Schoch v. First Fid. Bancorporation,

912 F.2d 654, 657 (3d Cir. 1990); see also Fed. R. Civ. P. 56(e) (requiring nonmoving party to

"set forth specific facts showing that there is a genuine issue for trial"). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001).

"Rule 56(c) mandates the entry of judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322-23.

## ANALYSIS

### I. Malicious Prosecution

Defendants maintain that Plaintiff alleges her malicious prosecution claim under state tort law, not under federal law. At the post-remand oral argument, Plaintiff's counsel claimed that Plaintiff asserts her malicious prosecution claim under federal law, based on an alleged violation of the Fourth Amendment, pursuant to 42 U.S.C. § 1983. This Court, however, rejects Plaintiff's belated contention. Plaintiff's Complaint avers a state tort claim for malicious prosecution.[15]

---

[15] If this Court agreed that Plaintiff asserted her malicious prosecution claim under federal law, the Tort Claims Act would be inapplicable, and this Court would analyze the malicious prosecution claim under the qualified immunity doctrine, applicable to section 1983 suits.

Section 1983 subjects to liability:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws. 42 U.S.C. § 1983.

This Court analyzes Plaintiff's malicious prosecution claim under New Jersey common law, and the Tort Claims Act.[16]

---

42 U.S.C. § 1983.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 129 S. Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

Because New Jersey has adopted the federal "objective reasonableness" test for immunity, the discussion below makes evident that Plaintiff's claim also fails under the analysis for malicious prosecution claims asserted under section 1983.

[16]  The Third Circuit has held that malicious prosecution claims are cognizable under section 1983.  See Johnson v. Knorr, 477 F.3d 75, 81-82 (3d Cir. 2007).  The Third Circuit incorporates the elements of a common law malicious prosecution claim, and also requires that a plaintiff satisfy an additional requirement—namely, the "deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." Id.; see Albright v. Oliver, 510 U.S. 266, 277-78 (1994) (Ginsburg, J., concurring) (intimating that a malicious prosecution claim may serve as the basis for a section 1983 claim alleging a violation of the Fourth Amendment). The determination that Plaintiff alleges her claims under state law is, therefore, largely, academic.  Nonetheless, this Court's conclusion rests on an analysis of the Complaint and the course of this litigation.

First, Plaintiff's Complaint does not include any reference to 42 U.S.C. § 1983 in the fourth cause of action alleging malicious prosecution.  In contrast, the Complaint specifically indicates which causes of action are alleged under federal law as follows:  1) § 1983 -  false arrest (claiming violations of the Fourth Amendment); 2) § 1983 - false imprisonment (claiming violations of the Fourth Amendment); 3) wrongful arrest and improper investigation of a crime, no source given; 4) malicious prosecution, no source given; 5) § 1983 - abuse of process; and 6) § 1985 conspiracy liability (claiming violations of the Fifth and Fourteenth Amendment).

Second, Plaintiff asserted both federal question jurisdiction and pendent jurisdiction in the Complaint.  In light of Plaintiff's counsel's statements at oral argument, that counsel believed that the improper investigation claim was a federal claim, the malicious prosecution claim would have served as the only basis for asserting pendent jurisdiction.

Third, Plaintiff explicitly states in the Complaint that "Plaintiff filed a Notice of Claim in compliance with [the] New Jersey[] Tort Claim[s] Act."  (Compl. ¶3.)  Yet, it is only in response to the Defendants' mention of flaws in the Notice of Claim (pertaining to the timeliness of the Notice if Plaintif alleged state law claims for false arrest/imprisonment) that Plaintiff conclusorily asserts that a Notice of Claim is not needed for a section 1983 "action."  (Pl.'s Pre-remand Opposition Brief 36.)

Fourth, this Court observes that Plaintiff neglected to voice any objections to Defendants' frequent, and unambiguous, reference to the malicious prosecution claim as a state

"[M]alicious prosecution is not a favored cause of action because citizens should not be inhibited in instituting prosecution of those reasonably suspected of crime."  Brunson v. Affinity Federal Credit Union, 972 A.2d 1112, 1119 (N.J. 2009) (quoting Lind v. Schmid, 337 A.2d 365, 368 (N.J. 1975)).  "On the other hand, one who recklessly institutes criminal proceedings without any reasonable basis should be responsible for such irresponsibility."  Id. (quoting Lind, 337 A.2d at 368).

Under New Jersey law, the tort of malicious prosecution requires proof of (1) a criminal proceeding instituted or continued by the defendant against the plaintiff; (2) termination of it in favor of the accused; (3) absence of probable cause for the charge; and (4) malice, which may be "appropriate evidence from which to infer but not necessarily establish malice."  Lind, 337 A.2d at 368.

Defendants do not dispute elements one and two.  Criminal charges against Plaintiff resulted in two indictments that were later dismissed.  Here, as is usual for a malicious prosecution claim, the central inquiry is lack of probable cause.  Id. at 368.

"Probable cause exists where the facts and circumstances within . . . the officers'

---

law claim in several letters to this Court.  Plaintiff also did not object to the portion of this Court's Opinion referring to Plaintiff's malicious prosecution and improper investigation claims as state common law claims and applying the Tort Claims Act.  In the May 25, 2006 Opinion, this Court stated that "Plaintiff also alleges causes of action under state law for improper investigation and malicious prosecution."  Drisco, 2006 U.S. Dist. LEXIS 33983, at *7.

Finally, although Plaintiff discusses counts three and four with references to section 1983, the Fourth Amendment, and federal case law, within a few pages in her 37-page pre-remand opposition brief, that is an insufficient basis for this Court to presume that Plaintiff asserts a section 1983 claim for the deprivation of a constitutional right in light of what is essentially an unambiguous Complaint, in this regard, and in light of the course of this litigation.  When faced with Defendants' clear assertion, in the post-remand summary judgment brief, that Plaintiff's malicious prosecution claim is a state law claim, Plaintiff did not take the opportunity to object to that classification in her post-remand opposition brief.

knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been or is being committed." Brunson, 972 A.2d at 1121-22  (internal brackets omitted) (quoting State v. O'Neal, 921 A.2d 1079, 1085 (N.J. 2007)).

"The substance of all the definitions of probable cause is a reasonable ground for belief of guilt." Id.  "In the application of that standard, 'the totality of the circumstances must be considered in determining whether there is probable cause and the court must make a practical, common sense determination.'" Id. (internal brackets and quotation marks omitted).

"Traditionally, probable cause can be decided on summary judgment by the judge if no genuine issue as to any material fact or credibility conflicts exist." Tarus v. Borough of Pine Hall, 886 A.2d 1056, 1064 (N.J. Super. Ct. App. Div. 2005) (internal brackets and quotation marks omitted) (citing Merkle v Upper Dublin Sch. Dist., 211 F.2d 782, 788 (3d Cir. 2000), aff'd in part, 916 A.2d 1036 (N.J. 2007).  "[A] district court may conclude that probable cause did exist as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding, and may enter summary judgment accordingly." Estate of Smith v. Marasco, 318 F.3d 497, 514 (3d Cir. 2003) (internal quotation and citation omitted).

Based on the facts before this Court, there is no genuine issue of material fact in dispute regarding the existence of probable cause.  The totality of the circumstances indicates that Defendants had probable cause to continue the prosecution against Plaintiff, despite the existence of exculpatory facts.  No reasonable juror could conclude that Defendants lacked probable cause due to the eyewitness identifications placing Plaintiff in Room 17, and the general unreliability of recantation evidence, particularly in light of reported threats to several eyewitnesses.

16

Plaintiff's request for additional discovery, in the form of depositions does not change this Court's calculus.  Based on this Court's assumption that Defendants had knowledge of all exculpatory evidence in the record prior to both indictments, any deposition testimony pertaining to when certain exculpatory evidence became known would not preclude summary judgment.

As discussed below, even if Defendants lacked probable cause, Defendants' conduct is protected by statutory immunity under the Tort Claims Act.

**Good Faith Immunity and Failure to Investigate**

Plaintiff's sole articulated basis for holding the Officer Defendants (and potentially any Prosecutor Defendants involved in the investigation) liable is the alleged failure to look further into exculpatory facts.  Plaintiff points to the failure to focus in on Tara Borders as a suspect, and to secure additional blood samples from the Plaintiff after blood tests supposedly failed to yield conclusive results.  Plaintiff also alleges that "Defendants in this case knew that [Plaintiff—] the woman in custody[—] was not the killer at the time they sought the first [i]ndictment against [Plaintiff]."  (Plaintiff's Opposition to the Motion for Summary Judgment 26.)

Defendants argue that even if probable cause did not exist, Defendants are entitled to state tort immunity, on Plaintiff's malicious prosecution claim, based on 'good faith' immunity under the Tort Claims Act.  N.J. Stat. Ann § 59:3-3 ("section 3-3").  This Court agrees.

Section 3-3 "provides such employees with a qualified immunity, one that applies to 'acts' done in the 'execution or enforcement of any law,' provided those 'acts' are performed in good faith."  Bombace v. City of Newark, 593 A.2d 335, 338 (N.J. 1991).[17]

---

[17] "N.J.S.A. 59:3-3 provides public employees with only qualified immunity with respect to law enforcement:  'A public employee is not liable if he acts in good faith in the execution or enforcement of any law.'"  Bombace, 593 A.2d at 338 (quoting section 3-3).

Section 3-3 applies to the Officer Defendants and the Prosecutor Defendants, to the extent that the prosecutorial defendants may be said to have engaged in behavior outside of their adversarial capacity.[18]

"Good faith immunity under [section 3-3] has two alternative components":  (1) objective reasonableness, and (2) 'subjective good faith.'"  Toto v. Ensuar, 952 A.2d 463, 470 (N.J. 2008) (quoting Alston v. City of Camden, 773 A.2d at 703 (N.J. 2001)) (indicating that "both forms of good faith overlap as a matter of fact and law").  "The burden of proof is upon the [public] employee, who must prove either of those components in order for the good faith immunity to attach.  Id. (quoting Alston, 773 A.2d at 703).

The objective reasonableness component under the Tort Claims Act is the same as the objective test for qualified immunity in section 1983 suits.   Wildoner v. Borough of Ramsey, 744 A.2d 1145, 1153 (N.J. 2000); Brayshaw v. Gelber, 556 A.2d 788, 793 (N.J. Super. Ct. App. Div. 1989) (citing Hayes v. Mercer County, 526 A.2d 737, 741 (N.J. Super. Ct. App. Div. 1987)) (New Jersey courts "adopted an objective good faith standard, derived from the [Supreme Court of the United States'] opinion in Harlow v. Fitzgerald, 457 U.S. 800, 807 [(1982)]").  This inquiry turns on the "objective legal reasonableness of the action, assessed in light of the *legal rules that were clearly established* at the time it was taken."  Pearson v. Callahan, 129 S. Ct. 808,

---

[18]   New Jersey law, like federal law, determines the level of immunity afforded prosecutors based on whether prosecutors are operating in a quasi-judicial capacity.  Under section 3-3, immunity is qualified where a prosecutor is involved in the conduct of an investigation.  Cf. Buckley v Fitzsimmons, 509 U.S. 259, 273-74 (1993) (identifying similar federal standard for qualified immunity).  In contrast, under N.J. Stat. Ann. § 59:3-8, near absolute prosecutorial immunity is triggered by conduct "intimately associated with the judicial phase of the criminal process."  Cf. Imbler v. Patchman, 424 U.S. 409, 431 (1976) (identifying similar federal standard for absolute immunity).

822 (2009) (emphasis added) (internal quotation and citation omitted).

By adopting this federal qualified immunity standard, New Jersey courts, like federal courts, allow "ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.'" <u>Giles v. Davis</u>, 427 F.3d 197, 203 (3d Cir. 2005) (quoting <u>Hunter v. Bryant</u>, 502 U.S. 224, 229 (1991)).[19]

The conduct of the Officer Defendants, and the Prosecutor Defendants (to the extent any Prosecutor Defendants assumed investigatory roles during the criminal proceedings against Plaintiff), is protected by good faith immunity because Defendants did not violate a "clearly established" rule.

Plaintiff argues that Defendants failed to investigate evidence that indicated that Plaintiff might not be the killer, including "exculpatory laboratory evidence" (Compl. ¶ 27), or to follow up on "discrepancies in the identification process," such as video images and still photos that allegedly "indicated no resemblance between [P]laintiff and Tara Borders" (<u>id.</u> ¶¶ 27, 28), recantations from witnesses (<u>id.</u> ¶ 28), and physical "evidence seized by warrant" (<u>id.</u>).

Under New Jersey law "the prosecutor need not . . . search for evidence that would exculpate the accused." <u>State v. Hogan</u>, 676 A.2d 533, 544 (N.J. 1996). There appears to be no basis for this Court to require more from police officers and investigators. Here, the failure to

---

[19]  To satisfy the subjective test, a public employee must show that motivations for the action taken were not malicious, or otherwise "impermissible." <u>See</u> <u>Dunlea v. Twp. of Belleville</u>, 793 A.2d 888, 892 (N.J. Super. Ct. App. Div. 2002) (quoting <u>Wood v. Strickland</u>, 420 U.S. 308, 322 (1975)). The subjective test is "a second line of defense" for an official who acted unreasonably, yet believed his actions were reasonable. <u>Hayes</u>, 526 A.2d at 741. Defendants rely exclusively on the federal "objective reasonableness" standard. <u>See</u> <u>Harlow</u>, 457 U.S. at 817-19 (rejecting the subjective test for a test that "focuses on the objective legal reasonableness of an official's acts").

properly investigate, if such were the case, cannot serve as the basis of a malicious prosecution claim.  Plaintiff simply has not pointed to any right to further investigation of exonerating facts by any of the Defendants.[20]

In the absence of a violation of an established law, this Court need not entertain whether Defendants' actions were objectively reasonable.  Yet, even if Plaintiff could point to a clearly established rule requiring investigation of exonerating facts, there is no genuine issue of material fact as to Defendants' conduct, and Defendants were objectively reasonable in believing that probable cause existed to continue criminal proceedings against Plaintiff.

Summary Judgment is granted on behalf of the Officer Defendants, and any of the Prosecutor Defendants involved in an investigatory capacity, as to Plaintiff's malicious prosecution claim.

**Prosecutorial Immunity and Duty to Disclose**

The record includes sufficient information to determine that there is no genuine issue of material fact in dispute as to Defendants' alleged malice.  Without a showing of actual malice, a breach of a prosecutorial duty to disclose "clearly" exculpatory evidence, does not provide a basis for relief of the type Plaintiff seeks.

In the Complaint, Plaintiff claims that Defendants acted "maliciously in instigating and continuing the criminal proceeding in that they desired to harm [Plaintiff], and brought the

---

[20]  Because Plaintiff cannot show that Defendants violated any established rule, Plaintiff would not be able to show a violation of an established rule by reason of Defendants' supposed recklessness.  See Dunlea, 793 A.2d at 890-93 ( "[M]ere negligence on the part of a public employee is generally not sufficient to defeat the good-faith immunity provided by N.J.S.A. 59:8-3.")  "Recklessness, unlike negligence, requires a conscious choice of a course of action, with knowledge or a reason to know that it will create serious danger to others."  Id.

proceeding for a reason other than a desire to bring a suspected criminal to justice." (Compl. (fourth cause of action - malicious prosecution).)  Plaintiff's principal complaint against Prosecutor Defendants—the failure to disclose exculpatory evidence during grand jury presentation—falls squarely within the ambit of a prosecutor's adversarial role.

The specific Tort Claims Act immunity applicable to prosecutors and assistant prosecutors when acting in this adversarial or "quasi-judicial" capacity is codified at section 3-8 of the Tort Claims Act.  See N.J. Stat. Ann. § 59: 3-8; Hayes, 526 A.2d at 740.

Section 3-8 reads: "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment."  N.J. Stat. Ann. § 59: 3-8.  "The Tort Claims Act [prosecutorial] immunity, however, is not so absolute as the federal immunity because all Tort Claims Act immunities are subject to [N.J. Stat. Ann. §] 59:3-14a: 'Nothing in this act shall exonerate a public employee from liability if it is established that his conduct was outside the scope of his employment or constituted a crime, actual fraud, *actual malice* or willful misconduct.'"  Hayes, 526 A.2d at 740 (emphasis added).

Plaintiff claims that the Prosecutor Defendants suppressed, or failed to disclose, evidence, particularly physical evidence, that is exculpatory in nature.  Breach of a prosecutorial duty to disclose so-called exculpatory facts does not provide a basis for removing the protections of prosecutorial immunity unless Plaintiff can show conduct that constituted "a crime, actual fraud, actual malice or willful misconduct."  See N.J. Stat. Ann §§ 59:3-8 and 14a.  While New Jersey law does impose a duty to present clearly exculpatory evidence to the grand jury, the duty is narrowly circumscribed, and the remedies for breach severely limited due to the grand jury's role as an "accusatory, and not an adjudicative body . . . ."  Hogan, 676 A.2d at 542.  For this reason

as well, New Jersey law does not require prosecutors to present evidence, to the grand jury, on

the suspect's behalf.  Id. ("[T]he prosecutor's sole evidential obligation is to present a prima facie

case that the accused has committed a crime.").  In addition, a prosecutor has no duty to

"construct a case for the accused."  Id. at 544.

On the other hand, "the grand jury cannot be denied access to evidence that is credible,

material, and so clearly exculpatory as to induce a grand juror to conclude that the State has not

made out a prima facie case against the accused."  Id. at 542 ("[T]he State may not deceive the

grand jury or present its evidence in a way that is tantamount to telling the grand jury a 'half

truth.' [New Jersey's] [S]tate [C]onstitution envisions a grand jury that protects individuals who

are victims of personal animus, partisanship, or inappropriate zeal on the part of a prosecutor.");

State v. Toliver, 849 A.2d 1071, 1073 (N.J. 2006) (quoting Hogan and assigning to prosecutors

the duty to present "clearly exculpatory" evidence to the grand jury).[21]

---

[21]  In this context, New Jersey extends protections that "exceed those provided under the
federal constitution."  State v. Engel, 592 A.2d 572, 586 (N.J. Super Ct. App. Div. 1991)
("acknowledg[ing] that [the New Jersey] State Constitution does not simply mirror its federal
counterpart, but instead constitutes a basis for independent rights and protections that are
available and applicable to the citizens of New Jersey.")  The Supreme Court of the United States
articulated the federal standard in U.S. v. Williams, 504 U.S. 36 (1992).  There, the Court held
that prosecutors have no duty to disclose exculpatory evidence to a grand jury and that district
courts are without power to dismiss an indictment for such failure.  Id. at 50-54 ("[C]ourts have
no authority to prescribe such a duty pursuant to their inherent supervisory authority over their
own proceedings.")  The Court reasoned that this duty did not exist for prosecutors because the
grand jury, at common law, had no obligation to consider exculpatory evidence.  Id. at 51.  New
Jersey has explicitly declined to apply Williams.  Hogan, 676 A.2d at 540.  Indeed, the New
Jersey Supreme Court noted, in Hogan, the definitive case on this issue, "the criticism directed at
Williams for its failure to protect the grand jury's historical function of 'filter[ing] out unfounded
criminal allegations and shield[ing] an individual from a malicious prosecutor."  Id.; cf.
Williams, 504 U.S. at 68 (Stevens, J., dissenting) ("It blinks reality to say that the grand jury can
adequately perform [its] important historic role if it is intentionally misled by the prosecutor-on
whose knowledge of the law and facts of the underlying criminal investigation the jurors will, of
necessity, rely.").

Under New Jersey law, a prosecutor's duty to offer exonerating evidence is triggered "only in the rare case in which the prosecutor is informed of evidence that [(1)] directly negates the guilt of the accused and [(2)] is clearly exculpatory."  Hogan, 676 A.2d at 543; State v. Cook, 750 A.2d 91, 99 (N.J. Super. Ct. App. Div. 2000) (finding two witness identifications of persons other than the defendant not "clearly exculpatory" where other witnesses identified the defendant).

The first element is satisfied if "the exculpatory evidence at issue squarely refutes an element of the crime in question . . ."  Hogan, 676 A.2d at 543.  The court in Hogan indicated that one element that may be refuted by exculpatory evidence is whether a particular accused committed the act.  See id. at 543-45 (ruling out exculpatory evidence that goes toward motive or the credibility of the State's witnesses).

 "The second requirement, that the evidence must be 'clearly exculpatory,' requires an evaluation of the quality and reliability of the evidence.  The exculpatory value of the evidence should be analyzed in the context of the nature and source of the evidence, and the strength of the State's case."  Hogan, 676 A.2d at 543.  The court in Hogan suggested that "the exculpatory testimony of one eyewitness is not 'clearly exculpatory' if contradicted by the incriminating testimony of a number of other witnesses."  Id.

Contrastingly, the court intimated that "physical evidence of unquestioned reliability demonstrating that the defendant did not commit the alleged crime would be clearly exculpatory, and the grand jury should be informed of such evidence."  Id. at 544 (citing State v. Gaughran, 615 A.2d 1293 (N.J. Super. Ct. Law Div. 1992) (granting plaintiff's motion to dismiss the indictment where prosecutors withheld results of medical tests that "directly contradict[ed] the

23

victim's claim of anal and vaginal penetration"). The court in <u>Hogan</u> continued, stating that "[i]n such instances, a failure to present the exculpatory evidence to the grand jury may raise questions about the prosecuting attorney's good faith and could deprive the grand jury of the opportunity to screen out unwanted prosecutions." <u>Id.</u> at 544.[22]

The Prosecutor Defendants did not violate a prosecutorial duty to disclose exculpatory evidence. "Under the[] rigorous standards [for such a duty], much of the information complained of did not have to be submitted to the grand jury." <u>Womack</u>, 679 A.2d at 612. The duty to disclose, or not to withhold, clearly exculpatory evidence affords only the most narrow protection. Although Plaintiff identifies some unfortunate mistakes, this is not a case where the prosecutor knowingly failed to reveal clearly exonerating evidence that refuted an element of the crime Plaintiff was charged with.

The physical evidence that Plaintiff deems exculpatory merely refutes a theory of the crime—that one woman checked into the motel with the victim, had sexual intercourse with the victim, and committed the murder. The evidence in <u>toto</u> did not rule out other possibilities, for example, that the murderer, one of three persons in Room 17, had sexual intercourse with the victim, without a condom, or that the murderer committed the murder despite having not had intercourse with the victim. Plaintiff does not portend that anyone entering Room 17 necessarily passed through the lobby. Plaintiff makes no showing that this is a case where prosecutors withhold evidence that the suspect physically could not have committed the act, or that a credible alibi establishes that the suspect could not have committed the offense.

---

[22] This Court, in consideration of a motion for summary judgment, as opposed to a motion to dismiss an indictment, is not in a position to inquire into the Prosecutor Defendants' "good faith," as no such exception exists to invalidate prosecutorial immunity under section 3-8.

It is within prosecutorial discretion to deem the absence of physical evidence placing Plaintiff in Room 17 not clearly exculpatory.  On these facts, this Court must defer to such a conclusion.   It cannot be the case that whenever a prosecutor could have disclosed more information, a court must find that the information was improperly suppressed, thereby usurping prosecutorial discretion.

The physical evidence Plaintiff focuses on falls far short of completely exonerating Plaintiff of the charges made, or undermining an element of the crime.

Plaintiff's emphasis on inconsistencies in eyewitnesses' identifications is also misguided because several witnesses continued to insist that they had seen Plaintiff with the victim the morning of the murder, either in a car with the victim, or in Room 17.  (See generally Defendants' Pre-remand Reply and Post-Remand Reply.)  Even if this was not the case, based on the instant facts, such recantations, or partial recantations, are thoroughly unreliable.  See Van Engelen v. O'Leary, 732 A.2d 540, 548 (N.J. Super. Ct. App. Div. 1999) (quoting Hogan, 676 A.2d at 544) ("Evidence that a witness recanted prior testimony normally need not be presented to the grand jury: '[R]ecantation testimony is generally considered exceedingly unreliable. . . . . Partly because recantations are often induced by duress or coercion, . . .  the sincerity of a recantation is to be viewed with extreme suspicion.'") (emphasis added and internal quotations omitted); Cook, 750 A.2d at 99 (A prosecutor is "under no obligation to present testimony as to competing identification of a perpetrator . . . .).

Moreover, "[c]onflicting eyewitness testimony cannot be clearly exculpatory, [], because it would require an assessment by the grand jurors of the credibility of the various witnesses, their opportunity to observe, recall and recollect the events as stated in their conflicting

testimony.  It might require an examination of whether the eyewitness was biased or motivated toward the prosecutor or the defendant." State v. Evans, 799 A.2d 708, 718 (N.J. Super. Ct. Law Div. 2001); see also Van Engelen, 732 A.2d at 548 (quoting Hogan, 676 A.2d at 544) ("[D]etermination of the impact of [] recantation[s] [is] a responsibility properly reserved for the petit jurors . . . .").

Regardless of these limitations, even if Plaintiff could demonstrate that the Prosecutor Defendants breached a prosecutorial duty by unreasonably determining that evidence was not "clearly exculpatory," Plaintiff has already received the relief this Court would be empowered to give for such a violation:  Defendants have voluntarily, albeit belatedly in Plaintiff's opinion, dismissed the indictment.

This Court's authority to invalidate immunity based on this manner of prosecutorial unfairness is severely limited.  Such action by this Court would be proper only if the misconduct rises to the level of actual fraud, actual malice, willful misconduct, or criminal activity.  The facts here do not indicate that the alleged misconduct presents itself in any of these forms.

 In fact, here, Plaintiff has not argued that malice is evident, but rather that malice may be inferred.  Based on this Court's above ruling that probable cause did not exist, this Court is in no position to infer malice.  Plaintiff has not, otherwise, attempted to make any showing that any of the Prosecutor Defendants were motivated by malice.  This result would not change even if probable cause existed.  See Brunson, 972 A.2d at 1120 ("[I]it is not unreasonable to require that plaintiff, on a defendant's motion for summary judgment, produce at least some extrinsic evidence of malice.'").

Plaintiff certainly does not allege crime, actual fraud, actual malice, or willful

misconduct, under section 3-14.  N.J. Stat. Ann § 59:3-14 (rendering tort immunity under section 3-8 inapplicable).  "[C]arelessness or poor decision making do not constitute actual fraud, actual malice or wilful misconduct.  Those terms connote commission of a forbidden act with actual . . . knowledge that the act is forbidden."  <u>Van Engelen</u>, 732 A.2d at 546 (internal quotation marks omitted).

"At most [P]laintiff[] demonstrate[s] mistaken judgment by [D]efendants."  <u>Id.</u> at 542 (granting summary judgment to defendants where plaintiffs failed to demonstrate defendants acted with improper motive for purposes of both statutory immunity and plaintiffs' malicious prosecution claim).

Without a showing of "actual malice"—the only exception to prosecutorial immunity even remotely pertinent here—tort liability cannot lie for the Prosecutor Defendants' alleged failure to disclose exculpatory facts during grand jury presentation.  The record lacks sufficient basis for a reasonable fact finder to conclude that the Prosecutor Defendants' conduct constituted a crime, actual fraud, actual malice, or willful misconduct.  Plaintiff's malicious prosecution claim, therefore, must fail.

Summary Judgment is granted on behalf of the Prosecutor Defendants as to Plaintiff's malicious prosecution claim.[23]

---

[23]  To the extent that any of the Prosecutor Defendants engaged in activities in their adversarial capacity, the above analysis pertains to these defendants.  It is unclear whether Asst. Prosecutor Regina Caulfield is the only prosecutor that presented to the grand jury.  Plaintiff previously asserted that Caulfield "was involved in two grand jury indictments against Plaintiff." (Pl.'s Brief in Opposition to Defs.' Motion for Summary Judgment 33.)  Plaintiff, however, dismissed Caulfield from this action, without prejudice.

**II. Plaintiff's Request for Discovery under Rule 56(f)**

Plaintiffs' Rule 56(f) request is denied as both procedurally and substantively deficient.

"Rule 56(f) requires the opposing party to file an affidavit outlining the reasons for the party's opposition.  An opposing party must set forth with specificity what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained."  Williams v. Beard, No. 4:08-CV-0044, 2010 WL 771660, at *4 (3d Cir. Feb. 26, 2010) (internal citations omitted).

Plaintiff asserts that Defendants are in possession of facts, to which Plaintiff has not been made privy, that are necessary for Plaintiff to mount an adequate opposition to Defendants' motion for summary judgment.  (Pl.'s Brief in Opposition to Defs.'s Motion for Summary Judgment 25.)   The thrust of Plaintiff's plea is that the existence of exonerating facts, including those Plaintiff seeks through discovery, demands greater exploration, particularly in terms of what Defendants knew at the time of the investigation.[24]  Plaintiff emphasizes that she did not receive reports pertaining to blood, saliva, and hair tests until June of 2004.  Plaintiff argues that she needs additional information regarding "what information defendants had when they made

---

[24]  Rule 56(f) provides as follows:

  (f) When Affidavits are Unavailable.  If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

  (1) deny the motion;
  (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or
  (3) issue any other just order.

  Fed. R. Civ. P. 56(f).

the initial arrest,[25] first indictment, and second indictment." Id.

The magistrate judge assigned to the case previously denied Plaintiff's request for depositions.[26]

Plaintiff renews her request to take depositions to (1) "establish the scientific findings and evidentiary relevance of these reports"; (2) "determine when defendants knew the results of these tests"; and (3) "determine [roles] prosecutors played in the investigation."  (Pl.'s Post-Remand Brief in Opposition to Defs.' Motion for Summary Judgment 25.)[27]

Plaintiff has not shown that the facts to be discovered, even if weighed in Plaintiff's favor, would preclude summary judgment.  Indeed, this Court has assumed, for the purposes of

---

[25]  The information known at the initial arrest stage is not pertinent to this discussion because Plaintiff's false arrest claim has been dismissed as time-barred.

[26]  Plaintiff failed to file a formal notice of motion and a party affidavit in support of her request for Rule 56(f) relief.  Kunkel v. Jasin, No. 09-CV-00371, 2010 WL 55293, at *2 (E.D. Pa. Jan. 06, 2010) (quoting St. Surin v. Virgin Island Daily News, 21 F.3d 1309, 1314 (3d Cir. 1994)) ("[T]he Third Circuit has 'underscored the benefits' of compliance with the technical requirements of Rule 56(f), particularly the need for a supporting affidavit.  It ensures that the non-moving party is invoking the protection of the rule in good faith and provides the showing necessary for the court to assess the merits of a contention that the motion is premature.") (internal quotation marks added).  In addition, there is no indication in the record that Plaintiff requested that the Magistrate Judge reconsider the decision denying her request to take depositions, or that Plaintiff appealed the Magistrate Judge's decision to this Court.  In light of this prior history, Plaintiff's failure to comply with the technical requirements of Rule 56(f) provide a sufficient basis, alone, for this Court to deny Plaintiff's request.  Cf. Id. ("[T]he failure to support a Rule 56(f) motion with an affidavit is not automatically fatal to its consideration if the motion itself identifies the information sought and how it would preclude summary judgment.").

[27]  In response to this Court's inquiry, at oral argument, into the specific discovery Plaintiff requests, counsel for Plaintiff responded:  "I want to depose those investigating officers. And I want to depose the person who did the lab. . . . . [and other Defendants].  Because that's what I've always wanted to do, I wanted to know what they knew at the time they went to the grand jury."  (Oral Tr. 41.)

this motion, that the factual issues resolve in Plaintiff's favor.

Plaintiff's request for additional discovery, in relation to her malicious prosecution claim, pursuant to Federal Rule of Civil Procedure 56(f), is denied.[28]

## III.  Improper Investigation

Plaintiff contends that "[t]he investigation conducted by the [D]efendants and their actions taken thereon were taken in bad faith or, in alternative, negligently . . . ."  (Compl. ¶ 23.) Plaintiff specifically alleges that Defendants "failed to properly investigate" (id. at ¶1), and that "[D]efendants should have recognized" that Plaintiff "did not commit" the murder (id. at ¶ 23).[29]

Notably, in a recent unanimous opinion, the New Jersey Supreme Court categorically denied the existence of such a claim.  See Brunson, 972 A.2d at 1124-25.  The Supreme Court "reject[ed] the [appellate panel's] creation of a new cause of action for negligent investigation as a surrogate for a traditional malicious prosecution claim."  Id. (emphasizing the "intentionally difficult requirements for a malicious prosecution claim" and referring to the "negligent investigation" claim as a "negligence back door").

Because New Jersey law does not recognize "improper investigation" as an independent

---

[28]  Plaintiff has not requested, nor has she shown any basis for requesting, additional discovery specifically on the issue of actual malice.  This Court would not be inclined to grant such a request, under the circumstances, in the absence of any indication of actual malice.  In fact, Plaintiff identifies no improper purpose in her papers, and none can be gleaned from the facts.

[29]  Both opposing counsel's and this Court's independent research yielded no relevant federal or state case law recognizing an independent cause of action for "improper investigation." At the post-remand oral argument before this Court, Plaintiff's counsel conceded that Plaintiff's "improper investigation" claim is not an independent and cognizable cause of action.  (Oral Arg. Tr. 50 (Plaintiff's counsel stated:  "as I do research on it, . . . I have not seen it as a stand alone claim.").)

cause of action in a malicious prosecution action, Plaintiff's "improper investigation" claim fails as a matter of law.

Summary judgment is granted, in favor of Defendants, on Plaintiff's "improper investigation" claim.[30]

## CONCLUSION

Probable cause existed for Defendants' prosecution of Plaintiff. Defendants' conduct is also protected under the good faith immunity and prosecutorial immunity provisions of the Tort Claims Act. Defendants' motion for summary judgment is granted.


 S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.C.J.
(Sitting by designation on the District Court)


Date:  March 23, 2010

---

[30] Plaintiff has not asserted any wrongdoing on the part of the County Prosecutor's Office or Union County Prosecutor Thomas V. Manahan. There is no basis, on these facts, for an action for supervisory liability against them. Such action cannot lie against the County Prosecutor's Office since none of its employees faces liability in this action. This reason applies equally to Prosecutor Manahan. Moreover, even if there were some misconduct to speak of, there is no indication that Prosecutor Manahan had knowledge of, acquiesced to, or personally directed any misconduct. Baker v. Monroe, Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995). Lastly, it appears from the docket that Plaintiff never served Prosecutor Manahan.
        Judgment is entered on behalf of the County Prosecutor's Office and Prosecutor Manahan on Plaintiff's malicious prosecution and "improper investigation" claims.